**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-3510-WJM-KLM

EQUITY STAFFING GROUP INCORPORATED,

    Plaintiff,

v.

RTL NETWORKS, INC.,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND AND
DENYING DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff Equity Staffing Group Incorporated ("Plaintiff") brings this action alleging breach of contract and related claims against RTL Networks, Inc. ("Defendant"). Before the Court is Plaintiff's Motion to Remand ("Motion to Remand") (ECF No. 14), and Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") (ECF No. 9). For the reasons set forth below, Plaintiff's Motion to Remand and Defendant's Motion to Dismiss are both denied.

## I. BACKGROUND

On March 14, 2013, Defendant entered into a Contract with the United States Department of Energy - Western Area Power Administration (the "DOE") to provide information technology support services (the "DOE Contract"). (DOE Contract (ECF No. 17-1).) The parties entered into a subcontract agreement, effective April 1, 2013 (the "Subcontract"), by which Plaintiff would assist Defendant in performing the DOE Contract. (Subcontract (ECF No. 14-1).)

The DOE soon began raising concerns with Defendant regarding Plaintiff's performance under the DOE Contract.  (ECF No. 17-2 ¶¶ 5-6.)  By July 1, 2013, the DOE instructed Defendant to resolve Plaintiff's performance issues or risk termination of the DOE Contract.  (*Id.* ¶¶ 8-9; ECF No. 17-3 ¶¶ 8-11.)

In August of 2013, the parties met to discuss certain amendments to the Subcontract.  (ECF No. 5 ¶ 7.)  The parties then sent e-mail messages back and forth to discuss the amendments.  (*Id.*)

On November 18, 2013, Plaintiff sent Defendant a Notice of Default and Demand for Cure, requesting payment of past amounts owed and timely payment of present and future amounts owed.  (*Id.* ¶ 10.)  On November 19, 2013, Defendant attempted to terminate the Subcontract, and to backdate the termination to be effective July 1, 2013.  (*Id.* ¶ 12.)

On these facts, Plaintiff filed this action against Defendant in Denver County District Court on December 5, 2013.  (ECF No. 5 at 4.)  On December 30, 2013, Defendant removed the action to this Court, contending that the case was removable pursuant to 28 U.S.C. § 1442(a)(1) (the "Federal Officer Removal Statute").  (ECF No. 1.)  On January 27, 2014, Plaintiff filed a Motion to Remand.  (ECF No. 14.)  Defendant filed a Response to the Motion to Remand on February 20, 2014 (ECF No. 17), and Plaintiff filed a Reply on March 7, 2014 (ECF No. 21).  On April 17, 2014, this Court denied Defendant's Motion for Leave to File Supplemental Brief in Support of Opposition to the Motion to Remand.  (ECF No. 27.)

On January 6, 2014, Defendant filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 9.)  Plaintiff filed a Response to the Motion to Dismiss on

2

January 29, 2014 (ECF No. 15), and Defendant filed a Reply on February 18, 2014 (ECF No. 16).  Both motions are now ripe for decision.

## II. MOTION FOR REMAND

### A.  Legal Standard

Defendant bears the burden of establishing that the Court has jurisdiction over this action.  *See Figueroa v. Am. Bankers Ins. Co. of Fla.*, 517 F. Supp. 2d 1266, 1268 (D. Colo. 2006); *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 939 (E.D.N.Y. 1992) ("In removal cases, defendant bears the burden of showing that removal is clearly appropriate[.]").

Under 28 U.S.C. § 1442(a)(1), a private corporation may remove a case to federal court upon a showing that: (1) it was acting under the direction of a federal officer when engaging in the challenged conduct; (2) there is a causal nexus between the plaintiff's claims and the acts the private corporation performed under the federal officer's direction; and (3) there is a colorable federal defense to the plaintiff's claims. *See Greene v. Citigroup, Inc.*, 215 F.3d 1336, at *2 (10th Cir. 2000).

One of the primary purposes of the Federal Officer Removal Statute is to permit federal defenses to be litigated in the federal courts.  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  Therefore, federal subject-matter jurisdiction under the Federal Officer Removal Statute is liberally construed.  *See id.* at 406-07 (construing this statute as "not 'narrow' or 'limited'" but rather "broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law."); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).") (quoting *Willingham*,

395 U.S. at 407); *Watson v. Phillip Morris Co., Inc.*, 551 U.S. 142, 147 (2007) ("The words 'acting under' are broad, and this Court has made clear that [the Federal Officer Removal Statute] must be 'liberally construed.'").

**B.    Analysis**

Plaintiff moves to remand this action on the basis that: (1) Defendant was not "acting under" the direction of any federal officer when it terminated the Subcontract; (2) Defendant has failed to assert a federal defense, meaning no removal jurisdiction exists under 28 U.S.C. § 1442; and (3) Defendant waived its right to removal. (ECF No. 14 at 2.) The Court will take each of Plaintiff's arguments in turn.

1.    <u>Causal Connection Between Defendant's Actions and Federal Authority</u>

"Private actors removing cases under § 1442 bear a special burden of establishing the official nature of their activities." *Devaul v. TK Mining Servs. L.L.C.*, 2014 WL 183665, at *2 (D. Colo. Jan. 15, 2014) reconsideration denied, 2014 WL 585347 (D. Colo. Feb. 14, 2014) (internal citation and quotation marks omitted). "The established rule is that removal by a person 'acting under' a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations." *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002) (internal citation and quotation marks omitted). "It is not enough to prove only that the relevant acts occurred under the general auspices of a federal office or officer or that a corporation participates in a regulated industry." *Id.* "The official must have direct and detailed control over the defendant." *Id.* "Direct and detailed control" is established by showing strong government involvement and the possibility that a

defendant could be sued in state court based upon actions taken pursuant to federal direction. *Id.* (citing *Ryan*, 781 F.Supp. at 948-49 (listing cases)).

Here, Defendant argues that it was acting under the direct and detailed control of a federal officer when it terminated the Subcontract because it was instructed by the DOE to resolve Plaintiff's performance issues or risk termination of the DOE Contract. (ECT No. 17 at 7) (citing ECF Nos. 17-2 ¶ 8; 17-3 ¶ 8.)  The DOE had the right to terminate the DOE Contract for "any default" or failing to "comply with any contract terms and conditions."  (*Id.* (citing 48 C.F.R. § 52.212-4(m)); DOE Contract at 1.)  The DOE notified Defendant that it "needed to resolve these issues with [Plaintiff] or risk the DOE terminating the [DOE Contract] for cause."  (ECF Nos. 17-2 ¶ 8; *see also* ECF No. 17-3 ¶ 8.)  Defendant avers that it had no other option but to terminate the Subcontract. (ECF No. 17 at 7-8.)

The Court finds that Defendant's need to comply with the DOE's directive "represents the kind of strong government intervention necessary to constitute direct and detailed action at the behest of a federal officer, and constitutes more than merely attenuated conduct under the general auspice of federal direction."  *See CRGT, Inc. v. Northrop Grumman Sys. Corp.*, 2012 WL 3776369, at *2 (E.D. Va. Aug. 28, 2012) (finding removal appropriate where the "federal contracting officer expressly instructed [Defendant] to halt the provision of services that were the object of the subcontract"). Because Defendant complied with the DOE's directive to resolve the issues with Plaintiff, its actions were based on the directions of a federal officer.

Similarly, Plaintiff's claim for breach arises as a proximate consequence of the DOE's directive to remedy the issues with Plaintiff.  "A 'causal nexus' between the

claims at issue and a defendant's action under color of law exists when the claims arise as a consequence of the defendant carrying out the directives of a federal officer." *CRGT, Inc.*, 2012 WL 3776369, at *2; *see also Freiberg*, 245 F. Supp. 2d at 1149 (explaining that there must be "a sufficient causal nexus between what it has done under asserted official authority and the acts giving rise to the state claims."). The Court credits Defendant's theory of the case when determining whether a causal connection exists. *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)).

Although Plaintiff contends that Defendant "does not state that it was directed by the DOE to attempt to retroactively terminate the subcontract with [Plaintiff] or refuse payment for services previously rendered by [Plaintiff]" (ECF No. 14 at 6), the facts as alleged by Defendant indicate that but for the DOE's directive, Defendant would have continued to honor its Subcontract with Plaintiff. (ECF No. 17 at 7-8.)  This is sufficient to establish the casual nexus required for removal to this Court under the Federal Officer Removal Statute. *See CRGT, Inc.*, 2012 WL 3776369, at *2.

2.  <u>Colorable Federal Defense</u>

The Federal Officer Removal Statute "is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham*, 395 U.S. at 406-07.  A colorable federal defense need not be a "sustainable defense"; that is, a defendant "need not win his case before he can have it removed." *Id.* at 407.  Rather, "the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139.  In assessing whether a party has asserted a colorable federal defense, "no determination of fact is

6

required but it must fairly appear from the showing made that petitioner's claim is not without foundation and is made in good faith." *Colorado v. Symes*, 286 U.S. 510, 519 (1932).

Here, Defendant asserts two federal defenses: (1) official justification;[1] and (2) compliance with federal regulations. (ECF No. 17 at 10-14.) With respect to he defense of official justification, Defendant avers that it had no choice but to terminate the Subcontract based upon the DOE's directive to resolve Plaintiff's performance issues or face termination of the entire DOE Contract, including the Subcontract work. (ECF No. 17 at 11.) Defendant sets forth facts that its contract with the DOE is subject to a clause provided by the Federal Acquisition Regulation, 48 C.F.R. § 52.212-4(m), which permits the government to terminate a contract for cause.[2] (DOE Contract at 1.) Whether Defendant's assertions about the Subcontract are eventually found to be meritorious is irrelevant at this stage; what matters is whether Defendant has set forth plausible facts that advance a colorable defense of official justification. Because Defendant's plausible assertions, if true, would render it an innocent intermediary and preclude Plaintiff's action for breach, Defendant has advanced a colorable defense.[3]

---

[1] Official justification has been deemed a "colorable" federal defense. *See Willingham*, 395 U.S. at 409; *CRGT, Inc.*, 2012 WL 3776369, at *2 ("Defenses such as sovereign immunity, official justification, and reliance on regulatory prohibitions have been deemed 'colorable' federal defenses.").

[2] Both the Contract and the Subcontract incorporate 48 C.F.R. § 52.249-10, which permits the government to terminate a contract for default. (DOE Contract at 15; Subcontract at 35.) Additionally, the Subcontract incorporates 48 C.F.R. § 52.249-2, which permits the government to terminate a contract for convenience. (Subcontract § 27.)

[3] Since Defendant's colorable defense of official justification is sufficient for the Court to have jurisdiction over this action, the Court need not address whether Defendant's defense of compliance with federal regulations is also colorable.

Since the Court has found that Defendant has alleged that it was "acting under" the DOE when it terminated the Subcontract, that its claim for breach arises as a proximate consequence of the DOE's directive to remedy the issues with Plaintiff, and that Defendant has the colorable defense of official justification, the Court thus finds that Defendant has met its burden of establishing that this Court has jurisdiction over this action. See *Figueroa*, 517 F. Supp. at 1268; *Ryan*, 781 F. Supp. at 939.

3. Waiver

Plaintiff contends that Defendant waived its right to removal because it agreed, in its Subcontract with Plaintiff, to the following provision (the "Forum Selection Clause"):

> In the event a question, claim or dispute between the parties is not cognizable under Section 18.0 a., Disputes under the [DOE] Contract, the parties shall make a good faith attempt to settle such a claim or dispute by mutual agreement. If an agreement is not reached within a reasonable time, either party may pursue any right or remedy available at law and/or equity. *All such disputes arising out of or related to this Subcontract shall be subject to the exclusive jurisdiction and venue of the State of Colorado and Federal courts located in Denver County or Denver, Colorado, and the Parties hereby consent to such jurisdiction and venue.*

(Subcontract § 19 (emphasis added).)

In order for a party to waive its right to remove a lawsuit filed in state court, the waiver language must be "clear and unequivocal." *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (finding "clear and unequivocal" waiver where contract provided that "venue shall be proper under this agreement in Johnson County, Kansas"). Here, it is clear that the parties to the Subcontract agreed that their disputes would be resolved in any state court in Colorado or the District of Colorado. Both parties waived jurisdiction and venue as to these courts. But the clause does not specify how a choice is to be made among these forums, or who gets to make the

8

choice. Plaintiff maintains that, by this Forum Selection Clause, the parties consented to proceed in either state or federal court, and effectively waived the right to remove the case from the Colorado state court to this Court. (ECF No. 21 at 9.)

Courts dealing with similar forum selection clauses have found that the clauses do not deal with removal. For instance, in *QFA Royalties LLC v. Bogdanova*, the parties agreed that:

> [T]he exclusive venue for disputes between them shall be in the District Court for the City & County of Denver, Colorado, or the United States District Court for the District of Colorado, and *each party waives any objection it might have to the personal jurisdiction of or venue in such courts.*

2006 WL 3371641, at *2 (D. Colo. Nov. 21, 2006) (emphasis added). The Court noted that "this contract [did] not contain the typical indicia of a waiver of removal rights: an explicit waiver of rights, language granting one party the right to choose the forum for litigation or the establishment of one exclusive forum for litigation." *Bogdanova*, 2006 WL 3371641, at *2. Because "the language in the Franchise Agreement [did] not constitute a clear and unequivocal waiver of removal," the Court in *Bogdanova* denied the plaintiff's motion to remand. *Id.* at 4; *see also QFA Royalties, LLC v. Majed*, 2006 WL 3500618 (D. Colo. Dec. 1, 2006) (dealing with identical forum selection clause and denying motion to remand).

Similarly, this Court finds that the language in the Forum Selection Clause does not grant Plaintiff the unilateral right to choose the forum for litigation, and does not constitute clear and unequivocal waiver of removal rights. *See Spenlinhauer v. R.R. Donnelley & Sons Co.*, 534 F. Supp. 2d 162, 163 (D. Me. 2008) (citing to *Bogdanova*, 2006 WL 3371641, and finding that the Forum Selection Clause did "not deal with the


removal issue"). The Court, therefore, finds that Defendant did not waive its right to removal by agreeing to the Forum Selection Clause.

Accordingly, Plaintiff's Motion to Remand is denied.

## II. MOTION TO DISMISS

Defendant moves for dismissal of Plaintiff's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the

complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted).  "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).[4]

**B.     Analysis**

Plaintiff asserts causes of action against Defendant for breach of contract, promissory estoppel, unjust enrichment, and declaratory judgment.  The Court will consider each of Plaintiff's claims below.

   1.     Breach of Contract

It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Defendant moves to dismiss Plaintiff's breach of contract claim on two grounds.  First, Defendant contends that the Subcontract, which controls the dispute, establishes that Plaintiff is not entitled to its requested relief. (ECF No. 11 at 4.)  Second, Defendant argues that

---

[4]     The parties have submitted materials outside of the pleadings in support of or in opposition to the Motion to Dismiss.  (*See e.g.,* ECF Nos. 10-1, 15-1.)  Since the documents are referred to in the Complaint, are central to Plaintiff's claims, and there is no dispute over their authenticity, the Court will consider these materials without converting this Motion to one for summary judgment.

Plaintiff has failed to allege facts related to its satisfactory performance under the Subcontract. (*Id.* at 4.)

As to the first ground, Defendant argues that Plaintiff's requested relief for amounts owed depends on the Subcontract having been properly amended, which Defendant contends it was not. (*Id.* at 7.) Defendant further argues that since the Subcontract was never amended, there is no support for the amount Plaintiff alleges Defendant owes. (*Id.*) Whether or not the Subcontract was amended, however, is not integral to Plaintiff's claim for breach of contract because the Complaint alleges that Defendant breached the Subcontract, not the amended Subcontract. (ECF No. 5 ¶¶ 10-13) ("[Defendant] breached its duties under the [Subcontract], including without limitation, its payments obligations."). As the Subcontract explicitly contains payment obligations, and Plaintiff alleges that Defendant failed to meet these obligations, the Court finds no basis to dismiss Plaintiff's claim.

As to the second ground, Defendant argues that Plaintiff has failed to allege any facts demonstrating that Plaintiff has satisfactorily performed its obligations since Defendant's termination of the Subcontract in July 2013. (ECF No. 11 at 7.) The Complaint, however, does not limit Defendant's alleged breach, or Plaintiff's performance, to the time period after Defendant allegedly terminated the Subcontract. (ECF No. 5 ¶¶ 6-11.) Moreover, Plaintiff has submitted a document evidencing Plaintiff's performance under the Subcontract during this time period and alleges that it properly performed. (ECF No. 15-2.) Taking Plaintiff's allegations as true, the Court cannot dismiss Plaintiff's claim on this basis.

Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for breach of contract

is denied.

      2.      <u>Promissory Estoppel and Unjust Enrichment</u>

Defendant argues that Plaintiff's promissory estoppel and unjust enrichment claims should be dismissed because Plaintiff cannot maintain these claims when the Subcontract covers the same subject matter. (ECF No. 11 at 8-9.)

Although Defendant's statement of the law is generally accurate, a party may pursue a claim for promissory estoppel or unjust enrichment in the alternative to a claim for breach of contract. *See SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1092 (D. Colo. 2013) ("A party is permitted to pursue a claim for breach of contract and promissory estoppel in the alternative."); *Marquardt v. Perry*, 200 P.3d 1126, 1127 (Colo. App. 2008) ("[I]f a plaintiff fails to prove a breach of contract claim, he or she may nevertheless be able to recover on a promissory estoppel claim."); *Robert W. Thomas & Anne McDonald Thomas Revocable Trust v. Inland Pac. Colo., LLC*, 2012 WL 2190852, at *5 (D. Colo. June 14, 2012) (permitting plaintiff to plead breach of contract and unjust enrichment claims in the alternative); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

Here, Defendant alleges that the Subcontract was terminated effective July 1, 2013. (ECF No. 11 at 2.)  If this is found to be true, then no enforceable contract existed subsequent to the Subcontract's termination, and Plaintiff could potentially, in that instance, recover on its promissory estoppel and unjust enrichment claims. Defendant, in its Reply, contends that promissory estoppel and unjust enrichment are still not appropriate remedies for the post-termination time period because the

Subcontract's terms address Plaintiff's potential payments right post-termination. (ECF No. 16 at 8) (quoting Subcontract § 27.)

The Court finds that, since the scope of the Subcontract is in dispute, it is premature to dismiss Plaintiff's promissory estoppel and unjust enrichment claims at this time. *See SolidFX*, 935 F. Supp. 2d at 1092 ("Where, as here, the scope of the contract is disputed, a jury is permitted to decide between a breach of contract and a related tort claim."); *Bank of Am., N.A. v. F.D.I.C.*, 908 F. Supp. 2d 60, 108 (D.D.C. 2012) ("At this early stage of the litigation, the Court finds that the tort claims are adequately pled and not barred by the economic loss doctrine."). To the extent that discovery or further case development show that the duties allegedly breached by Defendant are in fact based on or inextricably intertwined with the Subcontract, the Court will revisit the issue.

Accordingly, Defendant's Motion to Dismiss Plaintiff's claims for unjust enrichment and promissory estoppel are denied.

3. <u>Declaratory Judgment</u>

This Court "may exercise its discretion to 'declare rights, status, and other legal relations . . . so long as the declaratory judgment would terminate the uncertainty or controversy[.]'" *Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo. 2006) (quoting Colo. Rev. Stat. §§ 13-51-105, 13-51-110). Defendant argues that the terms of the Subcontract control the dispute and, therefore, there is no uncertainty for this Court to resolve. (ECF No. 11 at 11.) The Court finds that there are uncertainties, however, regarding the scope of the Subcontract, whether the Subcontract had been amended, and whether it had been terminated. (ECF Nos. 11 at 6; 15 at 1; 16 at 9.) The Court, therefore, declines to dismiss Plaintiff's claim for declaratory judgment at this time.

### III.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1. Plaintiff's Motion to Remand (ECF No. 14) is DENIED; and

2. Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 9) is DENIED.

Dated this 6th day of June, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge